United States District Court
Southern District of Texas
**ENTERED**
March 25, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DALE WILKINSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-02685 |
| | § | |
| HOWARD ANDREWS, and | § | |
| LISA DIEHI GREGORY, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the Court is Defendants Howard Andrews and Lisa Diehi Gregory's (together, "Defendants") Motion for Leave to File First Amended Answer. ECF No. 41. Plaintiff opposes the motion. ECF No. 42. Based on the parties' briefing, the record, and the applicable law, the Court denies Defendants' motion.

## I.   BACKGROUND

This case involves Corvettes and counterfeits. In 2006, Plaintiff Dale Wilkinson bought a 1962 Chevrolet Corvette with the vehicle identification number ("VIN") 20867S111261. ECF No. 17 ¶ 16. The car came with a Massachusetts title, although Wilkinson did not register the vehicle at the time. *Id.* ¶¶ 8–9.

1

In 2022, Plaintiff moved to Florida. *Id.* ¶ 10. When he tried to register his Corvette there, however, he discovered that another 1962 Chevrolet Corvette—owned by Defendants—has the same VIN. *Id.* Later that year, "[i]n November 2022, Plaintiff contacted Defendants and presented proof that his vehicle possessed the original VIN." *Id.* ¶ 25. Unconvinced and undeterred, Defendants titled their Corvette in Montgomery County, Texas, the following year. *Id.* ¶ 26.

Plaintiff filed this case on July 18, 2024, seeking (1) a declaratory judgment that his Corvette—rather than Defendants'—bears the original VIN and (2) damages caused by Plaintiff being unable to obtain marketable title. ECF No. 1 ¶¶ 18–32.

On October 10, 2024, Plaintiff filed an Amended Complaint. ECF No. 17. The Amended Complaint is nearly identical to the Original Complaint, except that it adds some allegations to bolster Plaintiff's claim for damages. Specifically, Plaintiff alleges that he tried selling his Corvette before suing Defendants to a potential buyer—John Blumberg—for $110,000. ECF No. 17 ¶ 32. When Plaintiff disclosed the VIN issue, however, Blumberg counteroffered for only $86,000 before eventually just walking away entirely, discouraged by the clouded title. *Id.*

On November 1, 2024, the Court entered the original Scheduling Order. ECF No. 20. The deadline to amend pleadings was November 30, 2024, and the deadline for discovery was November 1, 2025. *Id.* The order allows counsel to continue

discovery past the deadline by agreement but directed that "[n]o continuance will be granted because of information acquired in post-deadline discovery." *Id.* [1]

Defendants filed their original Answer on November 8, 2024. ECF No. 22.

Fifteen months later, on February 11, 2026, Defendants deposed Plaintiff. ECF No. 41 at 1. Based on information learned during that deposition—and with trial little more than two months away—Defendants now move for leave to file an amended answer to assert three new affirmative defenses: failure to mitigate damages, laches, and unclean hands. *Id.* at 1–2.

## II.    AMENDING PLEADINGS AFTER THE SCHEDULING ORDER DEADLINE REQUIRES GOOD CAUSE UNDER FEDERAL RULE OF CIVIL PROCEDURE 16.

Federal Rule of Civil Procedure 16(b) governs motions to amend pleadings after a scheduling order deadline has expired. *Banks v. Spence*, 114 F.4th 369, 371 (5th Cir. 2024), *cert. denied sub nom. Holston Banks v. Spence*, 145 S. Ct. 1082 (2025). A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "The good cause standard *requires* the

---

[1] There is a small discrepancy between the deadline to amend listed in the Court's initial scheduling order and subsequent amended scheduling orders. The initial order sets the deadline as November 30, 2024, ECF No. 20; the subsequent orders set the deadline as November 11, 2024, ECF Nos. 29, 32, 36. For purposes of this motion, the Court assumes the deadline to amend was November 30, 2024—as set out in the initial scheduling order—since the subsequent orders were entered after both deadlines had already passed. *See, e.g.*, ECF No. 29 (entered June 4, 2025). In any event, Defendants' motion fails under either deadline.

3

party seeking relief to show that the deadlines [could not] reasonably [have been] met despite the diligence of the party needing the extension." *Id.* (emphasis in original) (quoting *S & W Enters., L.L.C. v. Sw. Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003)). Only if the movant demonstrates good cause "to modify the scheduling order will the more liberal standard of Rule 15(a) apply . . . to grant or deny leave." *Albaugh v. Wind Access Eng'g, Inc.*, No. 25-40434, 2026 WL 637724, at *3 (5th Cir. Mar. 6, 2026) (quoting *S & W Enters.*, 315 F.3d at 536).

## III.   DEFENDANTS HAVE NOT ESTABLISHED GOOD CAUSE UNDER RULE 16(B).

Defendants have not established good cause under Rule 16(b). To determine whether good cause exists under Rule 16(b), courts consider (1) "the explanation for the failure to timely move for leave to amend;" (2) "the importance of the amendment;" (3) "potential prejudice in allowing the amendment;" and (4) "the availability of a continuance to cure such prejudice." *Id.* *2 (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)).

First, Defendants do not adequately explain their failure to timely seek amendment. The deadline to amend pleadings was November 30, 2024—over fifteen months ago. *Compare* ECF No. 20 (setting deadline to amend), *with* ECF No. 41 (Defendants' motion for leave filed on March 13, 2026). Defendants argue this long delay was justified because the facts supporting their new defenses were "not

4

available until the deposition of Plaintiff on February 11, 2026," asserting that Plaintiff failed "to disclose the full facts supporting the defenses at an earlier time." ECF No. 41 at 3. There is no evidence, however, that Plaintiff hid or obscured these facts. Just the opposite, in fact.

As one example, Defendants maintain they first learned that Plaintiff declined to sell his car to Blumberg—rather than Blumberg backing out of the sale himself, as alleged in the Amended Complaint—during Plaintiff's deposition, contending that this new "fact" gives rise to a failure-to-mitigate affirmative defense. ECF No. 41 at 1–2. True enough, that may have been the first time Defendants learned who broke off the deal, Plaintiff or Blumberg. However, Plaintiff was not trying to hide that information because he was the one who testified to it during his deposition.

More importantly, Defendants were on notice about the potential sale to Blumberg *since October 2024* because Plaintiff included it in his Amended Complaint. ECF No. 17 ¶ 31 (describing failed sale to Blumberg). As Plaintiff aptly points out, Defendants could have explored the facts surrounding that sale—including who refused to go through with the deal—and any related affirmative defenses "through earlier interrogatories, earlier requests for production, requests for admission, or an earlier deposition." ECF No. 42 at 3–4. Instead, they waited until December 2, 2025, to serve their first interrogatories and document requests, and

5

until February 11, 2026, to depose Plaintiff. *Id.* at 4 n.2. Defendants fail to articulate a single reason—much less a good one—why they dragged their feet for so long. This factor decisively cuts against good cause.[2]

Second, the Court recognizes that Defendants' amendment would be important because it would raise three affirmative defenses. The Court also notes, however, that the amendment's importance only underscores Defendants' sluggish behavior in seeking discovery and developing the facts underlying its affirmative defenses. At best, this factor slightly favors Defendants.

Third, Plaintiff argues he would suffer substantial prejudice from having to adjust his litigation strategy on the eve of trial "to address new theories on causation, equity, delay, title history, alleged alternative sale options, and claimed prejudice from pre-suit conduct" if Defendants are allowed to add their new affirmative defenses. ECF No. 42 at 7. On the other hand, Defendants contend that Plaintiff would suffer no prejudice because "he may freely conduct discovery regarding his

---

[2] Indeed, Defendants' failure to explain their delay is so complete, the Court could treat it as dispositive and deny leave on that ground alone. *Banks*, 114 F.4th at 371 (explaining that the Fifth Circuit has "found the lack of an explanation sufficient to deny amendment" on its own, "without engaging in the remainder of the four-factor analysis"); *see, e.g.*, *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021) (upholding district court's denial of leave to amend based solely on the party's failure to explain the delay); *Marable v. Dep't of Commerce*, 857 F. App'x 836, 838 (5th Cir. 2021) (same); *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (same). Nonetheless, the Court will consider the remaining factors.

own conduct" and has "ample opportunity to collect evidence on the[] [affirmative-defense] issues prior to the trial date of June 8." ECF No. 41 at 4. "The [C]ourt need not determine whether Plaintiff[] would be prejudiced by granting Defendants' motion because, even if there were no potential prejudice to Plaintiff[], Defendants' failure to explain their delay and exercise due diligence outweighs any lack of potential lack of prejudice or any of the other factors the court considers in assessing good cause." *Andrews v. Rosewood Hotels & Resorts, LLC*, No. 3:19-CV-01374-L, 2021 WL 4709734, at *3 (N.D. Tex. Oct. 8, 2021).

Fourth and finally, the Court finds that continuance is not available to cure because, as the Scheduling Order made clear, "[n]o continuance will be granted because of information acquired in post-deadline discovery." ECF No. 20.

District courts "have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *AIG Europe, Ltd. v. Caterpillar, Inc.*, 831 F. App'x 111, 115 (5th Cir. 2020) (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). Here, two factors weigh strongly against finding good cause under Rule 16(b), one slightly supports it, and one is neutral. Thus, the Court concludes that Defendants have failed to establish

good cause to amend their Answer.[3]

## IV.      CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion for Leave to File First

Amended Answer. ECF No. 41.

**IT IS SO ORDERED.**

Signed on March 25, 2026, at Houston, Texas.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[3] Because Defendants have failed to establish good cause under Rule 16, the Court need not address their arguments under Rule 15. *Albaugh*, 2026 WL 637724, at *3 (explaining that a party must satisfy Rule 16's good cause standard before Rule 15's standard applies).